951 F.2d 1260
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Anna M. ROBERTS, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 90-5195.
 United States Court of Appeals, Tenth Circuit.
 Jan. 2, 1991.
 
 1
 Before JOHN P. MOORE and TACHA, Circuit Judges, and KANE, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 Anna M. Roberts appeals the denial of Supplemental Security Income (SSI) under Title XVI and Disability Insurance Benefits under Title II of the Social Security Act. She contends the Secretary misapplied the law and regulations and failed to consider her impairments in combination. The district court found substantial evidence in the record to support the ALJ's conclusion Ms. Roberts is capable of performing sedentary work and was not disabled on June 30, 1985. We reverse.
 
 
 4
 In 1985, when she was thirty-four, Ms. Roberts filed for SSI and disability benefits based on a serious fracture to her right knee, which required several surgeries and continued to cause her pain. Despite rehabilitation, she could not stand for more than fifteen minutes and had experienced degenerative changes in her knee and leg. Ms. Roberts also suffered from allergies triggered by molds and complained of chronic depression, anxiety, severe headaches, and manic-depression. She required medication and counseling for these mental problems.
 
 
 5
 After two unsuccessful hearings before an ALJ and a denial of review by the appeals council, Ms. Roberts filed this action in the district court. A magistrate judge, to whom the case was referred, reviewed the record at the fifth step of the sequential evaluation of claims for benefits. 20 C.F.R. § 404.1520. The magistrate judge accepted the ALJ's conclusion that Ms. Roberts was impaired as a result of chondromalacia of the patella, depression, and chronic allergic rhinitis; but these conditions did not prevent her from performing sedentary work. Although she suffers pain in her knee, Ms. Roberts gets relief from Motrin or Ibuprofen. Also accepted were the ALJ's findings Ms. Roberts' pain was not so severe that she was completely debilitated and that she did not meet the appropriate listing for a mental impairment. The ALJ had found Ms. Roberts' pain did not interfere with preparing meals, doing housework, shopping, and getting her son ready for school. The ALJ also found that Ms. Roberts' depression was "situational"; and although depressed, she was able to drive a car, had a good memory, and socialized once a week. Based upon the report of Dr. Manuel Soria, a treating physician, the ALJ found Ms. Roberts' mental condition does not fit the listing of impairments for an affective disorder or for "functional nonpsychotic disorder."
 
 
 6
 Finally, the magistrate judge accepted the ALJ's findings on Ms. Roberts' allergies, concluding they were not so severe that they prevented her from working. Although Ms. Roberts' counsel had contended she should not work in a carpeted environment, the ALJ's finding was based upon his reliance on a specific report from Ms. Roberts' allergist that only the dampness in the carpeting in her apartment had produced "increased symptomatology." The dampness was caused by a flood in Ms. Roberts' apartment, soaking the carpeting and intensifying the moldy environment which exacerbated her allergies.
 
 
 7
 Adding a vocational expert's evaluation to these conclusions, the magistrate judge found Ms. Roberts could do sedentary work, alternating between sitting and standing, in a clean environment. The district judge accepted the recommendations of the magistrate judge, concluding none of Ms. Roberts' problems were as severe as claimed. Addressing each of her objections, the court concluded substantial evidence in the record supported the denial of benefits. Ms. Roberts appeals that holding.
 
 
 8
 Three contentions are presented for our review. First, Ms. Roberts argues the district court erred in failing to consider the evidence of musculoskeletal complaints which fully established objective evidence of pain. Second, she contends the court did not fully consider the effect of her depression. Third, she maintains the court erred by ignoring the testimony of the vocational expert which showed that specific impairments prohibited her from performing any work. We need consider only one of these arguments.
 
 
 9
 Of all the issues raised, the one most telling is that dealing with Ms. Roberts' mental condition.[1] Ms. Roberts argues the magistrate judge misperceived the record from which he concluded her mental condition was "situational."
 
 
 10
 The magistrate judge focused upon clinical reports from Peggy Kelly, a family therapist at Star Community Mental Health Clinic, and Dr. Manuel Soria, Ms. Roberts' treating physician. From these reports and portions of the records from Star, the magistrate judge concluded Ms. Roberts "clearly had situational depression and does not fit the description of one who has an affective disorder, such as a depression under Social Security Regulation 85-15." The magistrate judge further found "no objective evidence supporting a May 19, 1988 letter from Dr. Susan Grayson that plaintiff met the listing of impairments for an affective disorder." The magistrate judge further concluded Ms. Roberts did not meet the condition for nonpsychotic disorders under § 12.04, Part 404, Subpt. P, App. 1, in Title 20 of the Social Security Regulations. There are portions of the record which the magistrate judge did not consider, however, which are very germane to the issue.
 
 
 11
 What the magistrate judge and the government on appeal fail to perceive is that the record clearly shows Ms. Roberts' mental condition had deteriorated from 1985 to 1988, when the last reports were filed. While it is evident from the record that Ms. Roberts was not disabled in early 1985 (see, for example, R.I, pp. 188-94), it is equally evident succeeding evaluations demonstrate her mental condition eroded as she aged. We do not, therefore, regard it remarkable or significant that diagnoses made early in her illness disagree with those made at later stages. Nor do we believe that the opinions of Dr. Soria or Dr. Susan Grayson can be disregarded as contradicted by other evidence.[2]
 
 
 12
 The government points out evidence from the treatment notes at Star Mental Health Center (R.I, p. 289) and the observations of Dr. Morris (R.I, pp. 342 and 327) to show inconsistency with the evaluations of Drs. Soria and Grayson. While the observations relied upon by the government were valid when made, they were both recorded in 1986, approximately two years before the opinions of Drs. Soria and Grayson were rendered.[3]
 
 
 13
 Dr. Soria's opinion was not conclusory but was based upon his personal and documented observations. He stated, for example, during the period of her last hospitalization, Ms. Roberts "manifested symptoms referrable to depression alternating with episodes of hyperexcitability as well as racing thoughts." R.I, p. 363. When he saw her following her release from the hospital, he observed "no substantial improvement." He stated, she appeared "rather fearful and complained of extreme pressure and durress [sic]." Id.
 
 
 14
 Moreover, as we read the record, Dr. Susan Grayson's opinion is not, as stated by the government, "conclusory and unsupported." Appended to the letter of May 19, 1988, signed by clinician, Dianna Brown, and Dr. Grayson, is what appears to be a two-page report of mental evaluations of Ms. Roberts made by Ms. Brown and concurred in by Dr. Grayson on May 23, 1988. That evaluation states Ms. Brown's observations of Ms. Roberts' ability to make occupational and personal adjustments. Ms. Brown made those observations in fifteen separate categories, such as ability to follow rules and instructions, react to job stress, and relate to co-workers, supervisors, and the public. In all but three categories, Ms. Roberts' capacity was rated as "poor or none." In the remaining three, the judgment was that she was "fair."
 
 
 15
 When this evidence is coupled with the report of Dr. Karyl Stanton, who observed that an electroencephalogram performed on Ms. Roberts on February 19, 1988, (R.I, p. 457) indicated "an abnormal EEG recording ... [that] could correlate with some underlying dysfunction, and/or injury to the right temporal lobe," and the testimony of Donald Lee Perry that his observations of Ms. Roberts indicated she was not mentally capable of holding a job (R.I, pp. 94-97), we must conclude there is substantial evidence of impairment overlooked by the ALJ and the district court. It is our further judgment that this evidence indicates Ms. Roberts is disabled within the meaning of Social Security Ruling 85-15. We therefore REVERSE the judgment of the district court and REMAND with instructions to return this matter to the Secretary for the institution of proper benefits as of the date of claimant's last application.
 
 
 
 *
 The Honorable John L. Kane, Jr., United States District Court Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We have, however, considered the remaining issues and find no error
 
 
 [2]
 Dr. Soria reported: "In considering the above assessment and evaluation it is with reasonable medical certainty that her mental and emotional impairment significantly affects her ability to interact with people, and stress in a worklike situation would greatly intensify her existing symptoms and would cause her to decompensate further." R.I, p. 364
 
 
 [3]
 The government seems to think it significant that Dr. Soria treated Ms. Roberts "for approximately a three week period." We do not. During whatever time Dr. Soria observed and treated his patient, he was her attending physician and, consequently, fully competent to render a medical opinion of her condition